STATE OF NEW YORK ET AL. *v.* UNITED STATES, CLARK ET AL., CONSTITUTING THE INTERSTATE COMMERCE COMMISSION, AND (INTERVENING) LEHIGH VALLEY RAILROAD COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

No. 283. Argued October 19, 20, 1921.—Decided February 27, 1922.

1. Absence of any substantial evidence to sustain a finding of the Interstate Commerce Commission material to an order adjusting rates, may be relied on in a suit directly attacking the order, to

which the United States and the Commission are made parties. P. 600.

2. Evidence found insufficient to sustain an order for a general increase of state passenger, baggage and milk rates as prejudicial to persons and localities in interstate commerce, under § 416, (§ 13, paragraph 4,) of the Transportation Act of 1920. P. 600. Cf. *Railroad Commission of Wisconsin* v. *Chicago, Burlington & Quincy R. R. Co., ante,* 563.

3. Interference with a charter fare-limiting contract between a railroad and a State, is not a taking of the property of the State or its people without due process of law, when done under the power of Congress to regulate interstate commerce; nor does the contract clause of the Constitution forbid. P. 600.

4. Intrastate rates so low that they discriminate against interstate commerce, within the meaning of the Transportation Act of 1920, may constitutionally be increased thereunder, by the Interstate Commerce Commission, to conform with like rates in interstate commerce fixed by it pursuant to the act. P. 601. *Railroad Commission of Wisconsin* v. *Chicago, Burlington & Quincy R. R. Co., ante,* 563.

272 Fed. 758, affirmed.

APPEAL from a decree of the District Court dismissing a bill brought by appellants against the United States and the Interstate Commerce Commission to annul an order of the latter authorizing an increase of intrastate railroad rates. Various carriers intervened and became appellees.

*Mr. Edward G. Griffin* and *Mr. John E. Benton,* with whom *Mr. Charles D. Newton,* Attorney General of the State of New York, and *Mr. George L. Meade* were on the briefs, for appellants.

The appellants have capacity to sue. *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163; *Rhode Island* v. *Palmer,* 253 U. S. 350; *New Jersey* v. *Palmer,* 253 U. S. 350; *California* v. *Southern Pacific Co.,* 157 U. S. 229; *Ames* v. *Kansas,* 111 U. S. 449; *American Express Co.* v. *Caldwell,* 244 U. S. 617; *Ex parte McCardle,* 7 Wall. 506.

This court has jurisdiction to review the facts on which the report, findings and order were made and to set aside the report, findings and order of the Commission. *Interstate Commerce Commission* v. *Union Pacific R. R. Co.,* 222 U. S. 541; *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457; *Seaboard Air Line Ry. Co.* v. *United States,* 254 U. S. 57; *Interstate Commerce Commission* v. *Illinois Central R. R. Co.,* 215 U. S. 452.

The formula of raising all state rates to the level of interstate rates is too rigid to be practicable and too unjust to have been intended by Congress. *Minnesota Rate Cases,* 230 U. S. 352, 412; *Shreveport Case,* 234 U. S. 342; *American Express Co.* v. *Caldwell,* 244 U. S. 417; *Illinois Central R. R. Co.* v. *State Public Utilities Commission,* 245 U. S. 493. In none of these cases were any more of the state rates invalidated than those which the court held to be in direct conflict with lawfully established interstate rates. And § 13 (4) of the amended Interstate Commerce Act goes no further.

Regulation of interstate commerce may not provide revenue from state commerce. *Smyth* v. *Ames,* 169 U. S. 466, 541.

The New York Central is doing business under a charter contract. Only by abandoning its charter and by federal incorporation may it avoid the two cent fare. *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517; *Columbus Ry. & Power Co.* v. *Columbus,* 249 U. S. 399; *Brooks-Scanlon Co.* v. *Railroad Commission,* 251 U. S. 396; *Grand Rapids & Indiana Ry. Co.* v. *Osborn,* 193 U. S. 7. The purpose of Congress to violate this contract should not be implied. Congress may not forever destroy the rights of the State in a contract, under an unlimited and interminable exercise of its war powers. There are dicta to the general effect that Congress may impair the obligations of contracts, because at the time of the adop-

tion of the Constitution only the States were specially restrained and Congress was not. *Sinking-Fund Cases,* 99 U. S. 718; *Mitchell* v. *Clark,* 110 U. S. 643; *Legal Tender Cases,* 12 Wall. 529; *Evans-Snider-Buel Co.* v. *McFadden,* 105 Fed. 297; *Michigan Central R. R. Co.* v. *Slack,* 17 Fed. Cas. No. 9,527a, affd. 100 U. S. 595; *Evans* v. *Eaton,* Pet. (C. C.) 322; 8 Fed. Cas. No. 4,559; *Bloomer* v. *Stolley,* 5 McLean, 158; 3 Fed. Cas. No. 1,559; *Hardeman* v. *Downer,* 39 Ga. 425; *Jones* v. *Harker,* 37 Ga. 503; *Black* v. *Lusk,* 69 Ill. 70.

On the other hand the contrary has just as strongly been said. *Hepburn* v. *Griswold,* 8 Wall. 603, 623; *Sinking-Fund Cases,* 99 U. S. 700, 718–719; *St. Anthony Falls Water Power Co.* v. *St. Paul Water Commissioners,* 168 U. S. 372; *Legal Tender Cases,* 12 Wall. 457, 581; *Loan Association* v. *Topeka,* 20 Wall. 655, 663–664; *Fletcher* v. *Peck,* 6 Cranch, 87.

Madison had denounced such laws as " contrary to the first principles of the social compact and every principle of sound legislation." *Planters' Bank* v. *Sharp,* 6 How. 301, 319. One reason why the States had been specially restricted in Article X was because of outrages upon aliens and because the impairment of agreements with the British Government had endangered international relations. 5 Elliott, pp. 127, 171, 207, 546. The convention had rejected Mr. Gerry's resolution made on September 14th, to put a like prohibition on Congress.

Yet this does not necessarily mean that authority had been delegated to the Nation to commit an act *malum in se* and that national honor restrained only local greed.

If the prohibition on Congress does not rest upon first principles, the Fifth Amendment with the expanded interpretation of " due process " is now a sufficient restraint.

Due process in the Fifth and Fourteenth Amendments has come to mean the same thing. *United States* v. *Arm-*

*strong,* 265 Fed. 683, 690, and now protects all property against both the States and the United States. See particularly the dissenting opinion in *Wight* v. *Davidson,* 181 U. S. 371, 387.

. The State is a person under the analogy of the decisions that a private or municipal corporation is a person. The charter contract was made upon behalf of all the people and all the citizens of the State. Their interest represented by the State is entitled to the protection of the Constitution. *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163, 180.

Even though the State's right in this charter is not based upon property, its right should be recognized in its power—its police power over common carirers, and its power to create or to refuse to create corporations under such terms and conditions as it may see fit. Although a corporation, after its creation, under the Federal Constitution is entitled to engage in interstate commerce, before its creation the State may impose conditions precedent, which if imposed as conditions subsequent might be violative of various provisions of the State or Federal Constitutions. *Municipal Gas Co.* v. *Public Service Commission,* 225 N. Y. 93; *Railroad Co.* v. *Maryland,* 21 Wall. 456; *Horn Silver Co.* v. *New York,* 143 U. S. 305; *Raritan Co.* v. *Delaware Canal Co.,* 18 N. J. Eq. 546. The State may generally impose any condition in return for the grant of a charter. Although it may be impracticable for the railroad to abandon its corporate character and operate as a copartnership or otherwise, it is theoretically possible. On the other hand, if the burdens of its charter here are too great, it can seek incorporation as an interstate carrier under an act of Congress. The power of Congress to grant such a charter seems unquestionable. *California* v. *Central Pacific R. R. Co.,* 127 U. S. 1. Then it might become subject only to New York's police power.

*Reagan* v. *Mercantile Trust Co.,* 154 U. S. 413; Legal Possibilities of Federal Incorporation, 26 Yale Law Jour. 207; Right to Engage in Commerce, 8 Mich. Law Rev. 458; Federal Incorporation, 17 Mich. Law Rev. 64, 143, 238. For the present the benefits of the charter cannot be left to the railroad and its burdens removed by Congress throughout the life of the charter. *Paige* v. *Schenectady Ry. Co.,* 178 N. Y. 102, 114.

Discrimination must be substantial and material to warrant federal interference and the appropriate proof of substantial discrimination is loss of business thereby. *Illinois Central R. R. Co.* v. *State Public Utilities Commission,* 245 U. S. 493; *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.,* 145 U. S. 263; *Second Employers' Liability Cases,* 223 U. S. 1, 47. Under these decisions the normal volume of interline business on the Long Island Railroad is negligible and would not warrant any action by the Commission. Moreover, there is in this case no scintilla of evidence that even the smallest portion of this negligible so-called interstate business has been adversely affected in the least. As to the Staten Island Company, the case is even worse.

The railroads cannot claim that every passenger who leaves New York State after traveling on their lines is an interstate passenger while on their lines. *Gulf, Colorado & Santa Fe Ry. Co.* v. *Texas,* 204 U. S. 403; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Iowa,* 233 U. S. 334; *Pennsylvania R. R. Co.* v. *Mitchell Coal Co.,* 238 U. S. 251. The mere fact that there are two tickets, one interstate and one intrastate, does not conclude the inquiry. The only rule is that the decision must rest upon the facts of the case in question. *Southern Pacific Co.* v. *Arizona,* 249 U. S. 472; *Public Utilities Commission* v. *Landon,* 249 U. S. 236; *Arkadelphia Co.* v. *St. Louis Southwestern Ry. Co.,* 249 U. S. 134; *Illinois Central R. R. Co.* v. *Fuentes,* 236 U. S. 67.

The Commission has unauthorizedly assumed the authority of an appellate tribunal to review the action of the state legislature and regulatory bodies.

Its order is unlawful and unconstitutional on its face.

Congress did not attempt to enlarge the scope of the power of the Commission over intrastate rates, as is shown by the legislative history of the amendments of 1920.

The doctrine of the *Shreveport Case,* 234 U. S. 342, has not broadened materially the power of Congress over purely intrastate commerce.

The States, and not Congress, under the Constitution, have the right to regulate commerce within their respective borders.

*Mr. Walter C. Noyes* and *Mr. Alfred P: Thom,* with whom *Mr. George F. Brownell, Mr. W. S. Jenney, Mr. C. L. Andrus, Mr. R. W. Barrett, Mr. John J. Beattie, Mr. D. E. Minard* and *Mr. William D. Waldron* were on the briefs, for the railroad companies, intervening defendants.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

*Mr. Solicitor General Beck* for the United States.

MR. CHIEF JUSTICE TAFT delivered the opinion of the court.

This was a bill in equity against the United States and the Interstate Commerce Commission and others brought by the State of New York and its Attorney General to annul and enjoin the enforcement of an order of the Interstate Commerce Commission requiring the interstate railroads operating in intrastate commerce in the State of New York to charge in such commerce 3.6 cents a mile for all passengers, twenty per cent. increase over the then excess baggage rates to intrastate passengers; a surcharge of fifty per cent. of the charges for space in sleeping cars

to such passengers, and twenty per cent. increase in intra-
state rates on milk, all for the purpose of bringing the
intrastate rates to the level of the interstate rates pre-
viously fixed by the Commission. The bill was filed under,
and by virtue of, the statute repealing the Commerce
Court Act and conferring jurisdiction on the District
Court. 38 Stat. 219. The application for an interlocutory
injunction was heard by a Circuit Judge and two District
Judges. Then a final hearing was had, and the court
entered a final decree dismissing the complaint, from
which this appeal has been taken. The Railroad Com-
panies affected by the order were on their petition per-
mitted to intervene, and are here as appellees.

It appears from the record that, in the proceeding by the
Interstate Commerce Commission to fix interstate com-
merce rates to comply with the requirements of § 15a of
the Interstate Commerce Act, added by § 422 of the
Transportation Act of 1920, 41 Stat. 488—a proceed-
ing known as *Ex parte 74, Increased Rates,* 58 I. C. C.
220—the Commission, after conference with a committee
representing all the state commerce commissions and
authorities, authorized the group of interstate railroads
of which the railroads operating in New York were a part
to raise their freight rates forty per cent., their passenger
rates and excess baggage charges twenty per cent., and to
add a surcharge of fifty per cent. for passengers on sleep-
ing cars. As soon as the order in *Ex parte 74* was made,
the railroads concerned applied to the Public Service Com-
mission of the State of New York for similar increases in
intrastate rates. That commission granted the increase
in freight rates, but denied it as to milk rates and pas-
senger fares. The passenger intrastate fares were 3 cents
a mile under the order of the President during the war
control, but, when that should become ineffective, a
statute of New York fixing passenger fares on the New
York Central Railroad from Albany to Buffalo at two

cents a mile would come into force and operation. As soon as the state commission made its ruling, the railroads applied to the Interstate Commerce Commission under § 13 of the act, of which proceeding notice was given to the State of New York, the Attorney General and the Public Service Commission, all of whom appeared, for an order directing the railroads to put intrastate passenger fares, excess baggage charges, sleeping car surtaxes and milk rates on the same level with interstate rates. Proof was offered by the railways to show that conditions of operation in state and interstate passenger traffic were alike and there was no showing otherwise. The record in *Ex parte 74* was put in evidence. There was evidence also to show that at Buffalo and other border points the difference between the interstate and intrastate fares would divert business from the interstate lines between New York City and Buffalo to the New York Central lines, and that the same difference would break up interstate journeys to the west into intrastate journeys to Buffalo from New York and an interstate journey beyond, thus reducing interstate travel and discriminating against passengers carried therein. Evidence was adduced to show the injury to interstate business in the transportation of milk from the country to New York City from points outside of the State in competition with intrastate traffic in this necessity of life. No investigation was made into suburban commuter travel and it is excluded by the Commission from the scope of the order which it made. The order was state wide in its effect and required all interstate carriers to bring their intrastate milk rates, their intrastate passenger fares except commuters' rates, excess baggage charges and sleeping car surcharges to a level with interstate fares and rates as ordered in *Ex parte 74*. The Commission introduced a saving clause in its findings by which the New York authorities or any other interested parties were given leave to apply for modification of its order or

findings as to any intrastate fares, charges or rates in-
cluded therein on the ground that the latter were not
related to interstate fares, charges or rates in such a way
as to contravene the provisions of the Interstate Com-
merce Act. Under this clause, at least one petition has
been filed by a railroad and the railroad excepted from
the order.

The District Court dismissed the bill.

This case differs from the *Wisconsin Rate Case,* just de-
cided, *ante,* 563, in that it is a direct proceeding to annul
or set aside the order of the Interstate Commerce Com-
mission complained of, brought against the United States
and the Commission under the statute. *Skinner & Eddy
Corporation* v. *United States,* 249 U. S. 557. *The Wis-
consin Rate Case* was a suit by a railroad against the state
authorities to prevent the latter from penalizing the rail-
road for complying with the order of the Commission.
To this suit the United States and the Commission were
not parties. The defense of the state authorities was a
collateral attack upon the order, to prevail in which, they
were obliged to show that the order was void on the face
of the findings without regard to the evidence or the ab-
sence of it. In the case before us, the complainants are
entitled to rely on the absence of any substantial evidence
to sustain a material finding as a basis for attacking the
order.

The first objection of the appellants is that there was
no sufficient evidence of discrimination against persons
and localities under § 13, par. 4, § 416 of the Trans-
portation Act of 1920, to justify a state-wide order of the
kind here made. We have considered this objection in
the *Wisconsin Rate Case* on a similar showing on the find-
ings. Here we consider it on the evidence. We reach
the same conclusion here and sustain the objection.

The next objection is that the State has a charter con-
tract with the New York Central Railroad Company by

which the latter is bound not to charge more than two cents a mile for passenger carriage between Albany and Buffalo, and that, if the Transportation Act permits the Interstate Commerce Commission by such an order to enable the railroad company to violate its contract, it impairs the obligation of a contract in violation of § 10, Article I, of the Federal Constitution. That section provides that "no *State* shall . . . pass any . . . law impairing the obligation of contracts," and does not in terms restrict Congress or the United States. But it is said that it deprives New York and her people of property without due process of law. We said in *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 230, "Anything which directly obstructs and thus regulates that commerce which is carried on among the States, whether it is state legislation or private contracts between individuals or corporations, should be subject to the power of Congress in the regulation of that commerce." *Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467. See also *Scranton* v. *Wheeler,* 179 U. S. 141, 162, 163; *Union Bridge Co.* v. *United States,* 204 U. S. 364, 400.

The main objections to the order are the same as those presented, considered and overruled in the *Wisconsin Rate Case,* just decided. The evidence in this case shows that, if the passenger and other rates here in controversy were to continue in force as ruled by the Public Service Commission of New York, the annual gross revenues of the interstate railroads operating in the State of New York from both interstate and intrastate passenger and milk business would be less by nearly twelve millions of dollars than those revenues if the intrastate fares and rates were on the same level as the interstate rates as fixed by the Interstate Commerce Commission. If the lower level of intrastate fares and rates is to be maintained, it will discriminate against interstate commerce, in that it will require higher fares and rates in the interstate commerce of

the State to secure the income for which the Interstate Commerce Commission must attempt to provide by fixing rates under § 15a of the Interstate Commerce Act, as amended by § 422 of the Transportation Act of 1920, 41 Stat. 456, 488, in carrying out the declared congressional purpose " to provide the people of the United States with adequate transportation." As we have just held in the *Wisconsin Rate Case*, this constitutes "undue, unreasonable, or unjust discrimination against interstate . . . commerce ", which is declared to be unlawful and prohibited by § 13, par. 4, of the Interstate Commerce Act, as amended by § 416 of the Transportation Act of 1920, 41 Stat. 456, 484, and which the Interstate Commerce Commission is authorized therein to remove by fixing intrastate rates for the purpose. We need not repeat our reasons for our ruling. Nor need we consider and give again the grounds upon which we hold § 13, par. 4 as thus construed to be valid under the Constitution of the United States.

The decree of the District Court dismissing the bill of complaint is

*Affirmed.*