### BROWN v. S. A. L. RAILWAY CO.

#### (121 S. E., 669)

Carriers—Statutory Provision Penalizing Receipt of Excess Fare Held Applicable to Fare Originally Fixed by Director General. —Civ. Code, 1922, § 4843, forbidding a carrier to receive excess fares under a penalty fixed by Section 5006, *held* applicable to an excess fare paid on February 27, 1921, though the legal rate for the ticket in question went into effect by virtue of orders of the Director General, and has been continued in force by Transportation Act, 1920, § 208 (U. S. Comp. St. Ann. Supp., 1923, § 10071¼d), as under Section 200 (Section 10071¼aa) State jurisdiction over intrastate rates was restored except as limited by Sections 208, 416, and 422 (Sections 10071¼d, 8581, 8583a), in view of Interstate Commerce Act, § 1, as amended by Act Feb. 28, 1920 (Section 8563).

Before Whaley, J., County Court, Richland, September, 1923. Affirmed.

Action by I. A. Brown against Seaboard Air Line Railway Company. Judgment for plaintiff and defendant appeals.

*Mr. J. B. S. Lyles,* for appellant, cites: *Rates established by Director General were continued in effect after Federal control ended by Transportation Act of 1920:* 41 St. L. U. S., 464; Sec. 208. *Interstate Commerce Commission*

*has authority to fix intrastate rates:* 257 U. S., 653.  *When Congress acts all State laws are superseded:* 230 U. S., 597; 22 S. C., 220; 29 S. C., 510; 1 Cranch, 137; 113 S. C., 236.

*Messrs. Graydon & Graydon* for respondent.

March 4, 1924.

The opinion of the Court was delivered by MR. JUSTICE MARION.

On February 21, 1921, the plaintiff, Brown, was charged by the defendant, Railway Company, $2.98 for transportation as a passenger from Columbia, S. C., to Olar, S. C. The transportation involved a trip wholly within this State, and the defendant carrier admits that the correct fare, under the lawfully established rate then in force, was $1.98. Upon the theory that the overcharge of $1.00 constituted a violation of Section 3167 of the Code of 1912, now Section 4843 of Volume 3, Code 1922, the plaintiff brought action in the County Court of Richland County to recover the penalty (at least $250.00) provided by Section 3308, Code of 1912, now Section 5006, Vol. 3, Code 1922. He recovered a verdict. The County Court set aside the verdict and granted a new trial. From the order granting the new trial the plaintiff appealed to this Court, with the result that the order of the County Court was affirmed. 122 S. C., 333; 115 S. E., 638.

Upon remand of the cause and pending the new trial awarded, the defendant secured leave of the County Court to amend its answer. By the amended answer the defendant set up the additional defense, not previously interposed, that on February 27, 1921, the rate between Columbia and Olar was in effect by virtue of Federal authority, and that plaintiff's rights were controlled exclusively by the Federal law. From judgment for the plaintiff in the sum of $250, recovered upon the second trial, the defendant now appeals upon two exceptions, which raise substantially the

one question of whether the trial Court erred in refusing to instruct the jury, at defendant's request, as follows:

"You cannot award any penalty provided by the South Carolina statute, because such statute was not intended to apply and could not apply to the violation of a tariff of railroad rates legally in effect by virtue of the orders of the Director General of Railroads of the United States pursuant to the power conferred upon him by statutes of the Congress of the United States."

The defendant introduced in evidence "Local Passenger Tariff, No. C-1," I. C. C. No. 3849, for Seaboard Air Line Railroad, issued February 15, 1919, and made effective March 1, 1919, by the Director General of Railroads under the United States Railroad Administration, whereby the rate from Columbia, S. C., to Olar, S. C., was fixed at $1.83, which amount, together with the authorized Federal war tax of 15 cents, made a total charge of $1.98 for a one way passenger fare between the two points. An agent of the defendant company testified that this tariff continued in effect until canceled by "Seaboard Air Line Railway Company, Local Passenger Tariff, No. C-2, I. C. C. No. 3911," effective March 1, 1921, whereby the passenger fare from Columbia, S. C., to Olar, S. C., was made $2.20. The tariff No. C-2, introduced in evidence bears on its cover the printed notation "Issued Jan. 15, 1921, Effective March 1, 1921, (Canceling Local Passenger Tariff No. C-1." No evidence tending to impeach the force and effect of the foregoing evidentiary matter was adduced by plaintiff.

For the purpose of this opinion it will, therefore, be conceded that the passenger tariff authorizing the rate of $1.98 from Columbia to Olar on the defendant's line of railroad was first issued and put into effect by the Director General of Railroads during the period of this railroad's operation by the United States Railroad Administration, and that the fare of $1.98 so established had not been "changed by State or Federal authority, or pursuant to authority of law" on

the 27th of February, 1921, when the plaintiff was charged the sum of $2.98 for transportation as a passenger from Columbia to Olar. It may further be conceded that the tariff of rates under which the defendant carrier was operating and under which it was regularly collecting as the established fare from Columbia to Olar the sum of $1.98, was a lawful rate, authorized and validated by Section 208 (a) of the Transportation Act of 1920 (41 Stat. L. 464 [U. S. Comp. St. Ann. Supp. 1923, § 10071¼d]), providing that—

"All rates, fares, and charges, * * * which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by State or Federal authority, respectively, or pursuant to authority of law," etc.

But we do not think it follows that on February 27, 1921, the State statute here invoked was inapplicable upon the ground and for the reason assigned by defendant, viz., "that such statute was not intended to apply and could not apply to the violation of a tariff of railroad rates legally in effect by virtue of the orders of the Director General of Railroads of the United States," etc. While the rate here in question was instituted by the Director General of Railroads and was continued in force by virtue of certain provisions of the Transportation Act of 1920, the jurisdiction of the States over railroad carriers for the purpose of controlling, regulating, and enforcing wholly intrastate rates was *ipso facto* restored by the relinquishment of Federal possession and control effected by the Transportation Act of 1920, whereby it is provided (Section 200 [U. S. Comp. St. Ann. Supp. 1923, § 10071¼aa]) :

"(a) Federal control shall terminate at 12.01 a. m., March 1, 1920; and the President shall then relinquish possession and control of all railroads and systems of transportaion then under Federal control and cease the use and operation thereof.

"(b) Thereafter the President shall not have or exercise any of the powers conferred upon him by the Federal Control Act relating—

"(1) To the use or operation of railroads or systems of transportation;

"(2) To the control or supervision of the carriers owning or operating them, or of the business or affairs of such carriers;

"(3) To their rates, fares, charges, classifications, regulations, or practices," etc.

That under the foregoing provisions of the Transportation Act of February 28, 1920, the status of railroad carriers thereby affected with respect to State regulation of intrastate rates was exactly the same after March 1, 1920, as it was prior to Federal control, except in so far as changed by other provisions of that Act or by other appropriate legislation of the United States Congress, would seem entirely clear.    Such restored status, as we apprehend, was not modified by other provisions of the Act, and has not been affected by other legislation, in so far as State control of intrastate rates is concerned, except in the following particulars : (1) That by the terms of Section 208 of the Transportation Act it was provided that the "rates," etc., continued in effect should not "be changed in such manner as to reduce" them prior to September 1 1920, "unless such reduction or change" should be approved by the Interstate Commerce Commission; and (2) that by the provisions of Sections 416 and 422 (Title 4, Transportation Act, Feb. 28, 1920, 41 Stat. at L., 484, 488 [U. S. Comp. St. Ann. Supp. 1923, §§ 8581, 8583a]), the Interstate Commerce Commission was vested with authority not previously conferred, "to deal directly with intrastate rates where they are unduly discriminating against interstate commerce" to such extent as may be necessary to maintain the "efficient regulation of interstate commerce under the paramount power of Congress." *Railroad Commission of Wisconsin v. Chicago, B. & Q. Railroad Co.,*

257 U. S., 563; 42 Sup. Ct., 232; 66 L. Ed., 371; 22 A. L. R., 1086. *New York v. United States,* 257 U. S., 591; 42 Sup. Ct., 239; 66 L. Ed., 385.

The intrastate rate with which we are here concerned was the rate in effect on March 1, 1920, when the carriers were released from Federal control and turned back to their owners. Under the provisions of Section 208, of the Transportation Act, the Interstate Commerce Commission had not been called upon prior to September 1, 1920, to approve any reduction at the instance of the carrier or of the State. Nor on February 27, 1921, was the existing rate in effect by virtue of any order, based upon an appropriate finding, promulgated by the Interstate Commerce Commission under the authority conferred by the Transportation Act to deal directly with and prescribe intrastate rates for the purpose of preventing an unjust discrimination against interstate commerce. The contention made in the Court below and to which our attention is confined by the appeal record is that the State statute is "inapplicable because the rate was in effect under the authority of the United States," in that it had been put in force by "orders of the Director General of Railroads of the United States," and had been continued in force by the provisions of Section 208 of the Transportation Act of February 28, 1920. Under the views above announced, that contention is untenable. By the provisions of the same Act of the United States Congress to which the legal force and efficacy of the rate is thus referred the control of the carriers by the Federal Government is expressly relinquished and control of the State governments, with respect to the regulation of intrastate commerce, restored, subject to limitations which, as above pointed out, are inapplicable to the facts of the case at bar.

If it be conceded that appellant's contention is broad enough to embrace the proposition that the authority conferred upon the Interstate Commerce Commission by the

Transportation Act of February 28, 1920, to fix intrastate rates, although unexercised in a given case, gives the Commission unified control of interstate and intrastate commerce and so preëmpts the legislative field· in the matter of the control and regulation of intrastate rates as to render nugatory the penal regulations of a State designed to enforce nondiscriminatory adherence to the lawfully prescribed fares and charges of an interstate carrier for wholly intrastate service, we cannot say that such intendment of Congress is so clearly disclosed as to require that construction and interpretation. Prior to the amendments to the Interstate Commerce Act (Comp. St. § 8563, *et seq.*), incorporated in the Transportation Act of 1920, the author ity of the Interstate Commerce Commission to control intrastate rates where such rates were found to be unjustly discriminatory in relation to interstate rates was well established. But, as was said by the Supreme Court in *Houston, E. & W. T. R. Co. v. United States,* 234 U. S., 342; 34 Sup. Ct., 833; 58 L. Ed., 1341:

"Undoubtedly—in the absence of a finding by the Commission of unjust discrimination—intrastate rates were left to be fixed by the carrier, and subject to the authority of the states, or of the agencies created by the states. This was the question recently decided by this Court in the Minnesota Rate Cases. *Simpson v. Shepard* (1913) 230 U. S., 352; 57 L. Ed., 1511; 48 L. R. A., (N. S.), 1151; 33 Sup. Ct. Rep., 729; Ann. Cas. 1916A, 18.

That the additional authority conferred upon the Commission to fix intrastate rates in order to prevent "a kind of discrimination against interstate commerce which the operation of the new act for the first time makes inportant," etc., was not intended wholly to preëmpt the field of legislative regulation of instrastate rates, would seem to be clearly recognized by the Supreme Court in *Railroad Commission v. Chicago, B. & Q. R. Co., supra,* wherein Chief Justice Taft, for the Court says:

"It is said that our conclusion gives the Commission unified control of interstate and intrastate commerce. It is only unified to the extent of maintaining efficient regulation of interstate commerce under the paramount power of Congress. It does not involve general regulation of intrastate commerce. Action of the Interstate Commerce Commission in this regard should be directed to substantial disparity which operates as a real discrimination against, and obstruction to, interstate commerce, and must leave appropriate discretion to the State authorities to deal with intrastate rates as between themselves on the general level which the Interstate Commerce Commission has found to be fair to interstate commerce.

In the absence, certainly, of a finding by the Interstate Commerce Commission warranting the exercise of the newly conferred authority and of the actual exercise of that authority by the fixing, pursuant thereto, of the particular intrastate rate with which we are here concerned, we see no sound reason for holding that the provisions of the Transportation Act of 1920 rendered the State statute here invoked inapplicable or deprived it of its original efficacy as a lawful police regulation within the scope of the State's reserved powers. Section 1 of the Interstate Commerce Act, as amended (41 Stat. L. 474 [U. S. Comp. St. Ann. Supp. 1923, § 8563]). *Railroad Commission v. Railroad,* 22 S. C., 220. *Sternberger v. Railroad,* 29 S. C., 510; 7 S. E., 836; 2 L. R. A., 105.

The contention is not made, and the point does not fairly arise upon the record, that on February 27, 1921, the Interstate Commerce Commission, by virtue of the Tariff No. C-2, purporting to have been issued January 15, 1921, to become effective March 1, 1921, had exercised the authority conferred and assumed exclusive control of the intrastate rate from Columbia, S. C., to Olar, S. C., and that such assumption of exclusive control would oust the jurisdiction of the State after January 15, 1921,

to enforce the penal statute here invoked, even though the new tariff had not become effective at the time of the alleged infraction of the statute. Nor is it contended that the penalty imposed by the State statute is so excessive in amount and so burdensome in its incidence upon interstate commerce as to constitute an unwarranted encroachment upon the domain of Federal power.

It follows, therefore, that the judgment of the Circuit Court must be affirmed.

MESSRS. JUSTICES WATTS, FRASER and COTHRAN concur.

MR. CHIEF JUSTICE GARY did not participate.