**GROSS et al. v. MISSOURI & A. RY. CO.**
**Civil Action No. 194.**

District Court, W. D. Arkansas,
Harrison Division.
*Nov. 10, 1947.*

Claude I. Depew, of Wichita, Kan., Harry Goldman, of Rochester, N. Y. and Jacob I. Goodstein, of New York City, for plaintiffs.

Virgil D. Willis, of Harrison, Ark., for receivers.

Eugene R. Warren, Sp. Atty. for State, of Little Rock, Ark., and Guy E. Williams, Atty. Gen., for State of Arkansas.

Williams, Boesche & McDermott, of Tulsa, Okl., for Cities of Eureka Springs and Berryville, Ark.

Lee Cazort, Jr., of Little Rock, Ark., for Richard R. Thompson and Mays Mfg. Co.

JOHN E. MILLER, District Judge.

On February 14, 1947, the plaintiffs filed a petition praying for the appointment of a receiver to take charge and possession of the property of the defendant corporation and to hold the same intact and to continue the prosecution and defense of any and all actions pending by or against the corporation in any courts, and any procedure pending before the Interstate Commerce Commission of the United States or any other governmental body. It was alleged that the defendant corporation was not insolvent but was unable to pay its creditors with funds on hand or obtainable; that many of the creditors were threatening to file suits and would do so unless some action be taken to prevent such filing; and that

244

in order to prevent the threatened multiplicity of suits in various jurisdictions it was necessary for a receiver to be appointed to hold intact the property pending action by the Interstate Commerce Commission on the application for a certificate of public convenience and necessity permitting abandonment filed with that body by the defendant. The petition further alleged that on or about September 6, 1946, the defendant ceased to operate its line of railroad when its trainmen and enginemen went on a strike because the corporation refused, on account of inability, to meet their demands for increased wages; that the corporation was not receiving sufficient revenues to meet operating expenses, and had not for several months prior to the cessation of operations; and unless a receiver be appointed that the creditors, all of them unsecured, would not receive full payment of their debts, and that the investment of the stockholders in the corporation would be lost. Through its attorney the defendant filed its consent to the relief requested in the plaintiff's petition. Thereupon an order was entered appointing Messrs. C. C. Alexander and W. S. Walker, Harrison, Arkansas, as receivers.

On May 14, 1947, the State of Arkansas was permitted to file an intervention alleging a lack of good faith on the part of the plaintiffs to operate the railroad or make any disposition thereof beneficial to the best interests of all concerned. A hearing was held on June 6, 1947, on the issues raised by the intervention and an additional receiver, Mr. J. B. Lambert of Helena, Arkansas, was appointed. Instructions were issued to the receivers directing them (1) to request the Interstate Commerce Commission to refrain for a period of 90 days from rendering a decision on defendant's action for a certificate of convenience and necessity to abandon the railroad, (2) to receive and consider plans for resumption of operation, and (3) to consider any offer to purchase or lease the whole or any part of said railroad.

No attempt has been made to disguise the true interest of the plaintiffs in the defendant corporation. The railroad ceased to operate on September 6, 1946. A short time after that date the defendant corporation commenced an action before the Interstate Commerce Commission to obtain a certificate of convenience and necessity to abandon, and subsequently plaintiffs purchased the majority of the capital stock of the corporation. The State of Arkansas intervened in the proceeding before the Interstate Commerce Commission. A hearing has been held by said Commission on the question of abandonment, but a decision has been withheld. Even though the court recognizes the true position of the plaintiffs, such cannot alter the disposition that must be made of the questions presented by the pleadings and by the reports of the receivers.

The receivers have filed their report as directed, recommending that operation of the railroad be resumed, and in addition numerous plans and suggestions have been submitted by interested third parties. It is apparent from an examination of this material that a resumption of operation would entail the procurement of a large capital outlay and an enormous amount of work and planning. In order to place this corporation on a sound financial and profit making basis, the railroad will have to be completely rehabilitated, but a thorough consideration of these problems is not within the province of this court at the present time.

The first difficulty encountered in these proceedings, that of the propriety of the appointment of receivers, may be passed without the necessity of an extensive discussion. The basic jurisdiction of the court, diversity of citizenship and jurisdictional amount, is present, and the appointment of receivers in a proper case is within the scope of the extraordinary powers of a court sitting in equity. Generally an equity receiver is appointed for the purpose of either preserving, liquidating or operating the property involved pending final disposition of a case before the court. In this regard the appointment of receivers is within the sound discretion of the court, and the receivership is ancillary to the main object of the suit. It has frequently been described as a means to an end and may not serve as an end in itself. See: Kelleam et al. v. Maryland Casualty Co. of Baltimore, 312 U.S. 377, 61 S.Ct. 595, 85 L.

Ed. 899; Gordon v. Washington, 295 U.S. 30, 55 S.Ct. 584, 79 L.Ed. 1282. In this case all interested parties, the plaintiffs on behalf of the stockholders and creditors, the defendant corporation, and the public, represented herein by the State of Arkansas, have joined in the request for receivers. With this state of facts before it, the court will not, of its own motion, enter into an examination of whether or not the original appointment of receivers was an abuse of its discretion as a court of equity.

■ A candid consideration of the law and the admitted facts defines with certainty the course that the court must follow. Basically there are but two possibilities: (1) That the road continue to operate or (2) that it be abandoned. Of course, the components of these two are numerous. Among such are: that it be abandoned only in part; that it be leased or sold to another carrier; that it be expanded to cover more territory and thereby obtain more revenue; or that it be reorganized. It is the sole province of the Interstate Commerce Commission to determine such questions as these and any action by the court prior to a submission of these issues to that Commission is unwarranted.

The Congress early realized that it was essential to protect the interest of the public in the operation or abandonment of railroads. The duty of affording such protection was entrusted to the Interstate Commerce Commission. That body is especially qualified to examine and consider all questions respecting the operation and abandonment of railroads and the responsibility for making the initial determination has been lodged with it. As expressed by Mr. Justice Frankfurter in Board of Trade of Kansas City et al. v. United States et al., 314 U.S. 534, at page 546, 62 S.Ct. 366, at page 372, 86 L.Ed. 432:

"Congress has therefore delegated the enforcement of transportation policy to a permanent expert body and has charged it with the duty of being responsive to the dynamic character of transportation problems."

49 U.S.C.A. § 1(18), provides:

"No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, or the contruction of a new line of railroad, or shall acquire or operate any line of railroad, or extension thereof, or shall engage in transportation under this chapter over or by means of such additional or extended line of railroad, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad, and no carrier by railroad subject to this chapter shall abandon all or any portion of a line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment."

Section 1(19) provides for notice and hearing in the event of an application for such a certificate.

Paragraph (20) of the same Section provides:

"The commission shall have power to issue such certificate as prayed for, or to refuse to issue it, or to issue it for a portion or portions of a line of railroad, or extension thereof, described in the application, or for the partial exercise only of such right or privilege, and may attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require. From and after issuance of such certificate, and not before, the carrier by railroad may, without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate and proceed with the construction, operation or abandonment covered thereby. Any construction, operation, or abandonment contrary to the provisions of this paragraph or of paragraph (18) or (19) of this section may be enjoined by any court of competent jurisdiction at the suit of the United States, the commission, any commission or regulating body of the State or States affected, or any party in interest."

Paragraph 20 then proceeds to provide a penalty against any carrier, officer, receiver,

etc., who knowingly violates these provisions.

In Western Pac. R. Co. v. Nevada-California-Oregon Ry., D.C.,N.D.Cal., 40 F.2d 731, at page 732, it is stated:

"The law is well settled that under the Interstate Commerce Act, as amended or supplemented by the Transportation Act of 1920, 49 U.S.C.A. § 1 et seq., the Interstate Commerce Commission has power to authorize or require the abandonment of all or a portion of a line of railroad theretofore used in interstate commerce."

The court in Village of Mantorville v. Chicago Great Western R: Co., D.C.Minn. 8 F.Supp. 791, at page 794, said:

"The fact that such order of the Commission may run counter to a state statute, a municipal ordinance, or even a charter provision, is no impediment to the Commission's exclusive and plenary jurisdiction to regulate interstate commerce. The fact that the order is termed permissive and not mandatory does not give a state or a municipality the right to proceed in abrogation of the Commission's findings and order, and it is now uniformly recognized that, under the Transportation Act of 1920 (Interstate Commerce Act, § 1(18–20), 49 U. S.C.A. § 1 (18–20), *the Interstate Commerce Commission has exclusive power to authorize the abandonment of all or a portion of a line of railroad used in interstate commerce.*

The following excerpt from State of Colorado v. United States et al., 271 U.S. 153, 46 S.Ct. 452, 454, 70 L.Ed. 878, is pertinent and holds that the Interstate Commerce Commission has exclusive jurisdiction of such questions as are before the court relative to the operation of any railroad engaged in interstate *and* intrastate commerce:"

"This railroad, like most others, was chartered to engage in both intrastate and interstate commerce. The same instrumentality serves both. The two services are inextricably intertwined. The extent and manner in which one is performed, necessarily affects the performance of the other. Efficient performance of either is dependent upon the efficient performance of the transportation system as a whole. * * *

"The exercise of federal power· in authorizing abandonment is not an invasion of a field reserved to the state. The obligation assumed by the corporation under its charter of providing intrastate service on every part of its line within the state is subordinate to the ·performance by it of its federal duty, also assumed, efficiently to render transportation services in interstate commerce. There is no contention here that the railroad by its charter agreed in terms to continue to operate this branch regardless of loss. Compare Railroad Commission [of Texas] v. Eastern Texas R. Co., 264 U.S. 79, 44 S.Ct. 247, 68 L.Ed.569. But even explicit charter provisions must yield to the paramount power of Congress to regulate interstate commerce. [State of] New ·York v. United States, 257 U.S. 591, 601, 42 S.Ct. 239, 66 L.Ed. 385. Because the same instrumentality serves both, Congress has power to assume not only some control but paramount control insofar as interstate commerce is involved. It may determine to what extent and in. what manner intrastate service must be subordinated in order that interstate service may be adequately rendered. The power to make the determination inheres in the United States as an incident of its power over interstate commerce. The making of this determination involves an exercise of judgment upon the facts of the particular case. *The authority to find the facts and to exercise theron the judgment whether abandonment is consistent with the public convenience and necessity, Congress conferred upon the Commission.* * * *

"Before examining the specific objections, the nature of the determination to be made by the Commission upon an application for leave to abandon should be further considered. As every projected abandonment of any part of a railroad engaged in both interstate and intrastate commerce may conceivably involve a conflict between state and national interests, the consent of the Commission must be obtained by the railroad in every case. To ensure due consideration of the local interests, Congress provided that a copy of every application must be promptly filed with the Governor of the state directly affected, that notice of the application must be published in some local

newspaper, and that the appropriate state authorities should have 'the right to make before the Commission such representations as they may deem just and proper for preserving the rights and interests of their people and the states, respectively, involved in such proceedings.'"

There are before the court administrative questions relating to the operation and abandonment of the Missouri and Arkansas Railroad which extends from Joplin, Missouri, to Helena, Arkansas, and which when in operation engaged in both interstate and interstate commerce. As hereinbefore pointed out, a determination of these questions is not for this court but is within the sole province of the Interstate Commerce Commission. There is no justiciable question presented until the Commission has disposed of these administrative matters, and pending action by that body, the court is compelled to "stay its hand". In Texas & Pacific Railway Co. v. Gulf, Colorado & Santa Fe Railway Co., 270 U.S. 266, 46 S. Ct. 263, 264, 70 L.Ed. 578, the court said:

"The function of the court upon an application for an injunction under paragraph 20 is a very different one from that exercised by the Commission when, having taken jurisdiction under paragraphs 19 and 20, it grants or refuses a certificate. The function confided in the Commission is comparable to that involved in a determination of the propriety or application of a rate, rule or practice. It is the exercise of administrative judgment. *Where the matter is of that character, no justiciable question arises ordinarily until the Commission has acted.*"

General American Tank Car Corporation v. El Dorado Terminal, 308 U.S. 422, 60 S.Ct. 325, 331, 84 L.Ed. 361, was a case dealing with a suit which grew out of a car leasing agreement, in the course of which questions arose involving car service rules and rates, a matter within the jurisdiction of the Interstate Commerce Commission. It is stated therein:

"When it appeared in the course of the litigation that an administrative problem, committed to the Commission, was involved, *the court should have stayed its hand pending the Commission's determination* of

the lawfulness and reasonableness of the practices under the terms of the act. There should not be a dismissal, but as in Mitchell Coal Co. v. Pennsylvania R. Co., supra [230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472], the cause should be held pending the conclusion of an appropriate administrative proceeding. Thus any defenses the petitioner may have will be saved to it."

Smith, Trustee, et al. v. Hoboken Railroad Warehouse and Steamship Connecting Co. et al., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123, 168 A.L.R. 497, and Thompson, Trustee, et al. v. Texas Mexican Railway Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132, are two recent cases of the United States Supreme Court which lend further emphasis to this conclusion. In the Smith case the debtor held the major part of its right of way under a 99 year lease from respondent. It filed its petition for reorganization under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, and the petitioner, Smith, was appointed Trustee. The lessor petitioned the reorganization court for termination of the lease on the grounds that the appointment of the trustee was a breach of the terms of the lease entitling the lessor to re-enter. The motion to terminate the lease was granted. The Supreme Court, in reversing, held that discontinuance of operation by the trustee amounted to abandonment of operations under Section 1(18) of the Transportation Act, and such being the case a certificate from the Interstate Commerce Commission was necessary. There were presented problems primarily for consideration and decision by the Commission and the reorganization court should not have declared a forfeiture of the lease until the questions had been passed upon by the Commission. At the close of his opinion Mr. Justice Douglas said [328 U.S. 123, 66 S.Ct. 953]:

"The District Court should stay its hand pending a decision by the Interstate Commerce Commission on the questions."

In the Thompson case the St. Louis, Brownsville and Mexico Railway Company had a trackage agreement with respondent in which the latter had reserved the right to cancel on one year's notice. After the Brownsville Railway filed its petition for

reorganization and Thompson was appointed trustee the respondent exercised its right to terminate, which was ignored by the trustee. Thereafter suit was brought in state court for damages and an injunction. The State Court denied an injunction but awarded damages. The Supreme Court reversed and remanded the cause so that it might be held pending the conclusion of appropriate administrative proceedings, stating that carriers being reorganized are not exempt from Section 1(18), and though the contract was terminated pursuant to its terms, a certificate of abandonment would still be required. Mr. Justice Douglas concluded his opinion by saying [328 U.S. 134, 66 S.Ct. 947]:

"Thus, however the case may be viewed, *the court below should have stayed its hand* and remitted the parties to the Commission for a determination of the administrative phases of the questions involved. Until that determination is had, it cannot be known with certainty what issues for judicial decision will emerge. Until that time, judicial action is premature."

Therefore, from the above it conclusively appears that a determination by the Interstate Commerce Commission as to whether the railroad shall be operated or abandoned must be made before the court can make further disposition of the case. Pending such decision by that Commission the present receivership should be continued for the primary purpose of preserving and keeping intact the property of the defendant corporation, and the receivers should fulfill this obligation with a minimum of expense in salaries and otherwise. Also, they should cease in their efforts to determine the feasibility of the operation of the railroad for the reasons hereinbefore stated. The receivers and their attorney should submit a statement of all expenses incurred together with a suggestion as to the remuneration which should be allowed for their services, covering the period of time from the date of their appointment to November 1, 1947.

■ ██ If the Commission decides that the railroad should be abandoned, then these proceedings should be dismissed because such a conclusion would be binding on the court, and if such a disposition should be made it could not be contended that the public had been deprived of any rights whatsoever. At the hearing before the Commission on defendant's request for a certificate of abandonment the state, representative of the public herein, appeared and stated its position, and it must be assumed that the state in so doing amply protected any and all rights of the public. Under the law no interested party is precluded from testing the legality of any order that may be made by the Commission. The procedure for such is set out in 28 U.S.C.A. § 47. However, that is a matter that may be considered at the proper time and in a proceeding other than the one now before the court.

On the other hand should the Commission conclude that the railroad should not be abandoned the duty on the part of the owners to operate the same would remain and such operation, in a proper case, might be enforced by a mandatory injunction. See: 49 U.S.C.A. § 1(20), supra, and Farmers Grain Co. et al. v. Toledo, P. & W. R. R. et al., 7 Cir., 158 F.2d 109 (a case in which a mandatory injunction was issued).

In any event, after the determination of the administrative questions by the Interstate Commerce Commission, the course that should be adopted by the parties and by the court will be comparatively clear.

██ On October 15, 1947, the City of Eureka Springs, Arkansas, and the City of Berryville, Arkansas, municipal corporations of the State of Arkansas, filed a motion for leave to intervene as defendants in this action, upon the grounds: (1) That interveners' interest in the subject matter is inadequately represented by existing parties and that they will be bound by a judgment, (2) that the intervenors will be adversely affected by a distribution or other disposition of the property of the defendant, and (3) that the interveners' defense and cross-claim and the main action have questions of law and fact in common, in particular respecting the right of the defendant to discontinue railroad service upon its lines.

Under Rule 24, Federal Rules of Civil Procedure, 28 U.S.C.A. following section

723c, intervention is divided into two categories: (1) Intervention of right and (2) permissive intervention. In the present motion grounds (1) and (2) are so worded as to amount to a claim for intervention as a matter of right while ground (3) falls into the permissive category.

The parties seeking to intervene are not creditors of, or bondholders or stockholders in, the defendant corporation, nor do they claim any interest sufficient and of a type to be denominated a lien, legal or equitable, on the property of the defendant. Their interest in the disposition of this railroad is that of the general public. It is not necessary at this time to pass on the sufficiency of their interest in order to dispose of ground (1) of the motion, for even if it be assumed that their interest is sufficient the fact remains that the State of Arkansas has already intervened in this cause on behalf of the public and is at the present affording adequate protection for the interests of parties in the position of these proposed interveners.

As for ground (2), in order that one be entitled to intervene as a matter of right his interest in the property must be one that is known and protected by the law, sufficient and of the type to be denominated a lien, legal or equitable. As stated by the court in Radford Iron Co., Inc., v. Appalachian Electric Power Co. 4 Cir., 62 F.2d 940, at page 942:

"It is well settled that the only interest which will entitle a person to the right of intervention in a case is a legal interest as distinguished from interests of a general and indefinite character which do not give rise to definite legal rights. Thus it was held in Ex parte Leaf, Tobacco Board of Trade [of the City of New York] 222 U.S. 578, 32 S.Ct. 833, 56 L.Ed. 323, that persons engaged in the business of selling leaf tobacco to manufacturers of tobacco products should not be allowed to intervene in proceedings for the dissolution of the American Tobacco Company, in order to assail the action taken in the lower court, because the nature and character of their interests was too general; and In re Engelhard [& Sons Co.], 231 U.S. 646, 34 S.Ct. 258, 58 L.Ed. 416, it was held that a single telephone subscriber was not entitled as of right to intervene in a suit in which a telephone company had sued a municipality to enjoin rates as confiscatory, since the municipality was the proper party to represent all the subscribers."

See, also: United States v. Columbia Gas & Electric Corporation et al., D.C.Del., 27 F.Supp. 116; Moore's Federal Practice, Vol. 2, page 2338 to page 2350, for a general discussion. It is clear that the interest of these interveners is not sufficient to bring them within the terms of Rule 24(a) (3) and entitle them to intervention as a matter of right.

Ground (3) of the motion falls within that class known as discretionary intervention. The disposition that must be made of the principal case, as distinguished from the motion now under consideration, has heretofore been discussed. At this stage of the proceeding nothing could be gained by allowing this intervention. As pointed out above the interest of these interveners is that of the public along the right of way of the railroad. The fact that the interest of the public is being adequately protected by a party to these proceedings, the State of Arkansas, coupled with the fact that the ultimate determination of the questions which will affect this interest lies with the Interstate Commerce Commission, and not with this court, compels the court, in the exercise of its discretion, to defer action on the motion to intervene at this time.

A petition was filed on October 31, 1947, by Richard Thompson and Mays Manufacturing Company, for leave to sue the receivers. The petition alleges that the petitioners are shippers along the right of way of the railroad and as such have suffered considerable damage as a result of the cessation of operations by the defendant corporation. The petition further alleges that this damage was incurred because of a scheme entered into by the defendant, its officers and directors, having for its purpose the abandonment of the railway facilities upon which the petitioners and others had come to rely. The prayer is for leave to maintain a suit for themselves and others of their class against the co-receivers as

250

such, the defendant, its officers and directors in the proper state court to obtain money judgments for whatever damages they may have sustained.

It should be noted in passing that the filing of this petition is itself evidence of the wisdom of the court in appointing receivers, because one of the principal grounds for such appointment was the threatened multiplicity of suits.

Certainly this petition should not be allowed now, if ever, and it too must wait for the determination by the Interstate Commerce Commission of the questions before it. Therefore, at the present time, and for the reasons heretofore stated, the petition of Richard Thompson and Mays Manufacturing Company for leave to sue the receivers will be denied.

A certified copy of the order in this cause in accordance with the foregoing will be furnished the Interstate Commerce Commission with the hope that the Commission will expedite the procedure before it.