## UNITED STATES ex rel. ST. LOUIS SOUTHWESTERN RY. CO. v. INTER-STATE COMMERCE COMMISSION et al.

(Court of Appeals of District of Columbia. Submitted April 30, 1923. Decided June 4, 1923.)

### No. 3962.

**1. Commerce ☞85—Commission acts as appraiser only in fixing tentative value of railroads.**

Under Act March 1, 1913, adding section 19a to the Interstate Commerce Act (Comp. St. § 8591), requiring the Commission to fix the value of the property used by common carriers, and providing that after a tentative valuation is fixed the Commission shall ·give notice to the carrier affected and to other persons, and if protest is made, afford a hearing before fixing the final valuation, the Commission acts only as an appraiser in fixing the tentative value, and can base its finding on ex parte hearings, or on information obtained by it with other methods.

**2. Commerce ☞86—Data in hands of Commission can be introduced on hearing of protest against tentative valuation.**

Under an order of the Interstate Commerce Commission, providing that the data on which the Commission based its tentative finding of the valuation of a carrier's property would not be open for inspection, unless and until· offered in evidence either in a valuation hearing under Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Comp. St. § 8591), or in a court of competent jurisdiction, the carrier is not denied an opportunity to offer the data in evidence at the hearing, if it desires to do so.

**3. Mandamus ☞73(1)—Will not issue to control construction of statute by Interstate Commerce Commission.**

The construction by the Interstate Commerce Commission of Interstate Commerce Act, § 19a, as added by Act March 1, 1913 (Comp. St. § 8591), providing that, unless otherwise ordered by the Commission, with reasons therefor, the records and data of the Commission shall be open to the inspection and examination of the public, as permitting the Commission to forbid inspection of the data by the carrier interested, as well as by the public, unless it is offered in evidence, is a reasonable construction by the Commission, in the exercise of discretion committed to it, and therefore cannot be controlled by mandamus. (Per Smyth, Chief Justice.)

**4. Mandamus ☞14(1)—Refused for want of demand on Commission to produce papers.**

A writ of mandamus, directing the Interstate Commerce Commission to permit a carrier to inspect the papers and data used by the Commission in fixing the tentative value of the carrier's property, and to permit the introduction of the same in evidence, was properly refused, where it did not appear that any demand had been made on the Commission to produce at the hearing any specified paper or record, or that the production of any such paper or record was refused by the Commission. (Per Smith, Acting Associate Justice.)

Robb, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Application for mandamus by the United States, on the relation of the St. Louis Southwestern Railway Company, against the Interstate Commerce Commission and others. From a judgment dismissing the writ, relator appeals. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charles D. Drayton, of Washington, D. C., and John R. Turney of St. Louis, Mo., for appellant.

P. J. Farrell, of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. The relator applied to the Supreme Court of the District of Columbia for a mandamus commanding the Interstate Commerce Commission to permit it to examine certain records in the possession of the Commission, and to issue subpœnas duces tecum for named employés of the Commission to appear and give testimony at a hearing to be had upon relator's protest against a tentative valuation of its property by the Commission, and bring with them all the records in their possession relating to the valuation. A rule to show cause was issued, in response to which the Commission moved to dismiss the petition on several grounds, which were to the effect that it did not state facts sufficient to entitle relator to the relief prayed. The motion was sustained, and, since the relator did not desire to amend, a judgment of dismissal followed.

By section 19a of an act approved March 1, 1913 (37 Stat. 701 [Comp. St. 8591]), it is provided that the Commission shall investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of an act to regulate commerce, approved February 4, 1887 (Comp. St. § 8563 et seq.). After having reached a tentative valuation, the Commission is required to give notice to the carrier affected, and to other persons, stating the valuation arrived at, and to give 30 days for the filing of a protest by those interested with the Commission. If a protest is filed, a time must be fixed for a hearing, at which the Commission must hear and consider any matter relative and material which may be presented in support of the protest. If, after the hearing, the Commission thinks the valuation previously fixed should be changed, it shall make the change, and the valuation fixed after the change shall be final, except in circumstances just to be mentioned. The final valuation is made prima facie evidence of the value of the property in all judicial proceedings for the enforcement of the Act of February 4, 1887, and the acts amendatory thereof, and in any proceeding to enjoin, in whole or in part, any order of the Commission. If upon the trial of any action involving the final value fixed by the Commission evidence shall be introduced regarding such value which is found by the court to be different from that offered upon the hearing before the Commission, or additional thereto, and substantially affecting the value, the court, before proceeding to render judgment, shall transmit a copy of the evidence to the Commission, and shall stay further proceedings in said action to such time as the court shall determine from the date of such transmission. Other provisions follow with respect to the valuation, but they are immaterial here.

The Commission has fixed a tentative value of relator's property, relator has protested the value fixed, and a date has been set for hearing the protest. By its petition relator sets forth that the Commission

has in the course of its investigations gathered a large amount of data upon which its tentative value was fixed; that it has not disclosed to relator the names, addresses, or qualifications of its subordinates who collected the data, nor the names or addresses of the carriers, contractors, dealers, manufacturers, or jobbers from whom certain contracts, invoices, and vouchers were obtained by it, nor the names of the land appraisers who made an inspection of relator's land, etc. It represents that, according to its information, many of those who gave opinions and statements to the Commission's investigators were without experiential qualifications to do so, and that it desires to test the soundness of the tentative value, by examining and verifying the opinions, statements, and data upon which it is based, and by cross-examining the witnesses who compiled the data and gave testimony with respect to the matters involved.

Relator also avers that it made demand for access to the underlying data just mentioned, for the purposes indicated, and that its demand was denied. Later it moved the Commission for an order permitting it to examine the data and make photographic copies of the same, and for subpœnas duces tecum, directed to the employees to appear and give testimony, and bring with them the records referred to. After the application was made, the Commission canceled the date of the hearing on the protest, and later entered an order wherein it stated that the opening of the records mentioned for inspection and examination by other than employees of the Commission would not be permitted, except under certain stated conditions.

It is charged by the relator that after the entry of the above order the chief counsel for the Commission declared that at the hearing upon the protest the relator would not be allowed to introduce the data referred to, or interrogate the employees of the Commission concerning the same, and that the Commission would not introduce any of the underlying data in evidence at the hearing. Therefore the relator alleges that it will not have an opportunity at the hearing to examine or test the evidence underlying the tentative valuation. In consequence it prays as we indicated at the opening of this statement.

The relator, both in its petition and its brief, makes clear that its purpose is to procure an opportunity to scrutinize and test the data and cross-examine the persons who gave the information on which the tentative valuation is based. The Commission, according to its order just referred to, believed that to allow the carrier this opportunity—

"would be detrimental to the public interest, would make it impossible for the Commission to secure as reliable and uninfluenced opinions as to land values and prices and cost information as it can otherwise secure, would unnecessarily prolong the work and greatly increase the expense thereof, and would seriously interfere with due performance of the regular duties of the Commission's employés."

We think it is true that persons who would be willing to speak freely and truthfully from an abundance of information upon the subject about which they talked, if they were assured their names would not be known to the carriers, might, because of their business or social relations, prove very reluctant witnesses on the stand, and might give only such information as was elicited from them by persistent ques-

tioning. Congress evidently had this in mind when it enacted section 19a. If it intended that the carrier should have the right to cross-examine the persons who gave the information and scrutinize the documents on which the Commission acted, it would, we think, have provided for a hearing at which the carrier would have the right to be present and to take such steps as it might deem necessary to protect its rights. But it did not do so. Instead it provided for a hearing before the Commission at a later stage in the process of valuation, at which the carrier is given a full opportunity to establish, if it can, that the valuation fixed is not correct. Presumably the relator knows the value of its own property (Chicago, Burlington & Quincy Railroad Co. v. Shafer, 49 Neb. 25, 31, 68 N. W. 342), and can prove it without calling upon the Commission to disclose its confidential information upon the subject.

[1] Up to the time the tentative value is arrived at the Commission acts as appraiser merely. It is free to gather its information from whatever source it pleases, and the carrier has no right to know the source or to question the persons from whom the information has been procured. In the case of Omaha v. Omaha Water Co., 218 U. S. 180, 197, 30 Sup. Ct. 615, 618 (54 L. Ed. 991, 48 L. R. A. [N. S.] 1084), the court passed upon the right of the city of Omaha, through its counsel, to examine the books submitted by the water company to appraisers named to fix the value of the company's plant. After pointing out the distinction between valuers and arbitrators, it stated that much of the evidence bearing upon the subject was submitted in the presence of counsel representing both sides, and was, of course, subject to the examination and cross-examination of the parties.

"This course," said the court, "did not, however, preclude them [the appraisers] from enlightening their judgment as experts by either personal inspection or by informing themselves in any other way of the value of the plant in question without calling in counsel if they desired further information."

Near the close of the taking of testimony the appraisers, according to the court's opinion, called upon the company for its books, and had the books gone over by an auditor of their own selection. Counsel for the city, learning of the call, asked for an opportunity to be present when the books were submitted. The opportunity was denied, and the city assigned this as error. In passing upon the matter the court said:

"We have only the lone fact that the appraisers of their own motion asked an opportunity to look over and have audited the company's books, and that the company granted the privilege as 'confidential information' for the use of the appraisers only,"

and held that counsel for the city was not entitled to be present when the books were submitted, and that there was no error in refusing to disclose the confidential information. If in that case the appraisers were entitled to treat the information which they derived from the water company, a private enterprise, as confidential, and to refuse to reveal it to those representing the city, a fortiori the Interstate Commerce Commission, acting for the public, should have the same right with respect to the information which it has procured, and which the

relator demands the right to inspect. Counsel have attempted to distinguish this case from the one at bar, but we think they have failed.

[2] While the relator charges that the chief counsel for the Commission stated that the relator would not be allowed to introduce the data referred to or interrogate the employees of the Commission who gathered the data, we think the formal order of the Commission is the best evidence of its attitude touching the matter. The order says that the data would not be open for inspection except to employees of the Commission—

"unless and until offered in evidence either in a valuation hearing under the provision of section 19a of the Interstate Commerce Act or in a court of competent jurisdiction."

This clearly means that the data and other matters covered by the order may be offered in evidence on the hearing before the Commission, and hence that the relator is not denied the right to offer them if it thinks proper to do so. The subpœna duces tecum to require the employees of the Commission to produce the records is entirely unnecessary. Those employees are subject to the direction of the Commission, and in a proper case they will be undoubtedly produced, with records pertinent to the issues to be tried, at the request of anybody entitled to have them testify.

[3] But there is another reason why the writ should not issue. Section 19a says:

"Unless otherwise ordered by the Commission, with the reasons therefor, the records and data of the Commission shall be open to the inspection and examination of the public."

Exercising the authority granted it by this provision, the Commission has made the order sealing the data. It is argued that, while this provision authorizes the Commission to close the data to the general public, it does not authorize it to prohibit a carrier interested from having access to it. Whether or not this construction, urged by the relator, is correct, is immaterial. The provision is certainly open to the interpretation placed upon it by the Commission. The latter may have erred, but we cannot, upon an application for a writ of mandamus, review its action for the purpose of determining whether or not it did err.

In the Waste Merchants' Case (Interstate Commerce Commission v. United States of America ex rel. Members of the Waste Merchants' Association of New York, 260 U. S. 32, 43 Sup. Ct. 6, 67 L. Ed. ——), the Commission refused to allow damages to the relator, on the ground that the statute did not authorize it. We issued a writ of mandamus, directing the Commission to grant the relief prayed for. The Supreme Court reversed the case, saying:

"Mandamus cannot be had to compel a particular exercise of judgment or discretion * * * or be issued as a writ of error,"

and cited its decision in Hall v. Payne, 254 U. S. 343, 41 Sup. Ct. 131, 65 L. Ed. 295, and other decisions bearing upon the point. In the Hall Case the court said:

"It is manifest from this statement that the petition presents a controversy over the true construction of the act of 1894. From the act, and the Secre-

tary's decision, it is apparent that the latter was not arbitrary or capricious, but rested on a possible construction of the act. * * * He [the Secretary] could not administer or apply the act without construing it, and its construction involved the exercise of judgment and discretion. The view for which the relator contends was not so obviously and certainly right as to make it plainly the duty of the Secretary to give effect to it. The relator, therefore, is not entitled to a writ of mandamus."

See, also, Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 23 Sup. Ct. 698, 47 L. Ed. 1074, and Ness v. Fisher, 223 U. S. 683, 32 Sup. Ct. 356, 56 L. Ed. 610.

Applying this language to the case before us, we cannot say that the construction placed upon the provision by the relator was so obviously and certainly right as to make it plainly the duty of the Commission to give it effect. At least the Commission's action rested "on a possible construction of the act," and therefore cannot be reviewed or controlled in a proceeding of this character.

This case is not like Ex parte Uppercu, 239 U. S. 435, 36 Sup. Ct. 140, 60 L. Ed. 368, where the court, exercising what it supposed to be its common-law power, entered an order forbidding a party access to certain depositions and exhibits which had been filed in the case. There was no statute in that case expressly conferring upon the court the power to make such an order.

The relator in its brief covers a wide field, and invites us to consider many things which we do not think should be given attention, because, as we view it, the decisions of the Supreme Court of the United States referred to, and many others which might be cited, as well as decisions of this court, make it very clear that we cannot control by mandamus the discretion vested in the Commission by Congress.

The judgment of the lower court is affirmed, with costs.

Affirmed.

Writ of error to remove cause to the Supreme Court of the United States allowed June 19, 1923.

SMITH, Acting Associate Justice (specially concurring). The Act of March 1, 1913 (37 Stat. 701), directs the Interstate Commerce Commission to make a tentative valuation of the property of common carriers subject to its jurisdiction and requires that notice of such valuation shall be given to the carrier who is allowed 30 days within which to protest. The act further provides that, if a protest be duly filed, the Commission must fix a time for a hearing, at which the carrier may present any relative or material matter in support of its protest.

I am of the opinion that in making the tentative valuation the Commission acts as an appraising body, but in hearing the protest, and in reaching a conclusion as to whether it will modify the tentative valuation, the Commission is exercising a quasi judicial function. The Commission sitting as appraisers may determine the tentative valuation on ex parte investigations, but when the Commission reviews that valuation after a hearing granted to the carrier by the statute it acts in a quasi judicial capacity, and cannot in my judgment deny to the carrier suitable process to secure the attendance of witnesses, or refuse

to produce specified papers or records in its custody which are material and necessary to establish the claims of the protest. To hold otherwise would, as I see it, make of the protest a mere empty form, and of no avail against the tentative valuation. The carrier, on the other hand, is not entitled to make an examination of the records of the Commission for the purpose of determining whether or not it will introduce them in evidence on the hearing of the protest. If there be in the possession of the Commission any record or paper which the carrier desires to offer in evidence on the hearing of the protest, it is the duty of the Commission, it seems to me, to produce such record or paper on proper demand therefor, in order that mistakes in the tentative valuation, if any there be, may be corrected before it becomes final.

The courts have no authority to value the properties of the carrier, or to modify or correct the final finding of the Commission; that must be done by the Commission itself. From that it follows that if the carrier is denied process to secure the attendance of witnesses, or if the Commission refuses to produce for use as evidence on the hearing specified records and papers in its possession or under its control, the carrier will be deprived of the protection which Congress intended to give by granting the right to protest and a hearing thereof.

[4] Inasmuch as it does not appear, however, from the record in the case, that any demand was made on the Commission to produce at the hearing any specified paper or record, or that the production of any such paper or record at the hearing was refused by the Commission, or that a subpœna duces tecum for the production of specific papers or records was denied, I concur in the conclusion reached by the Chief Justice.

ROBB, Associate Justice (dissenting from the judgment). In my view the Commission, in fixing the tentative value of the property owned and used by common carriers, is acting in a quasi judicial capacity, and not as a mere appraiser. Upon the filing of a protest by the carrier, the proceeding becomes adversary in character, and I think it follows that the carrier is entitled to be informed of the basis of the Commission's tentative decision. In my view there was every reason why the carrier in this instance should have been permitted access to the data and records relating directly to the valuation of its property, and no valid reason why it should not.

The provision of section 19a, in my opinion, simply vested in the Commission authority to withhold such records from the general public, and did not authorize the Commission to withhold them from the carrier affected thereby. The interpretation of this statute is finally for the court, and not the Commission. In Work, Sec. of the Interior, v. Mosier, 43 Sup. Ct. 389, 67 L. Ed. ——, decided by the Supreme Court of the United States on March 19, 1923, the court, through the Chief Justice, said:

"The question whether bonuses were to be included in royalties is a matter of statutory construction, not finally intrusted to the discretion of the Secretary, but determinable in court at the instance of the beneficiaries as of right."

And to the same effect is Work, Sec. of the Interior, v. McAlester-Edwards Coal Co., 43 Sup. Ct. 580, 67 L. Ed. ——, decided by the Supreme Court of the United States on May 21, 1923.

I therefore dissent from the judgment of the court.